## Richmond

GEORGE E. HARVEY v. CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA, ET AL.

June 18, 1956.

Record No. 4488.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*George E. Allen* and *Wilbur C. Allen* (*Allen, Allen, Allen & Allen*, on brief), for the plaintiff in error.

*William H. King* (*McGuire, Eggleston, Bocock & Woods,* on brief), for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

George E. Harvey obtained this writ of error to review a judgment and verdict for defendants in an action, brought by him, against Chesapeake and Potomac Telephone Company, owner, and Henry A. Phillips, operator of a truck, to recover damages for personal injuries alleged to have been caused by the negligence of defendants.

The accident occurred north of the intersection of Route 147 and Cherokee Road, in Chesterfield County, Virginia, a few hundred yards south of Hugenot bridge across James River. Route 147 is a main, arterial highway extending approximately north and south. It is hard surfaced, 22 feet wide, with broad, gravel shoulders. Cherokee Road extends across Route 147 at somewhat of an acute angle, that is, in a general southwestern and northeastern direction. It is hard surfaced, 20 feet wide, with gravel shoulders.

Plaintiff testified that between 8:30 and 9 A. M. on August 31, 1954, he was driving north on Route 147 at a speed of between 40 and 45 miles per hour and following 200 to 300 feet behind a truck operated by Walter Wilkinson, a fellow employee of Gentry Pump and Well Company; when he was three to four car lengths south of the intersection he saw defendants' truck standing still just a few feet north of a stop sign on the east entrance to the intersection and facing west. Plaintiff thought or assumed that the truck would remain in this position until he had passed through the intersection, but the operator of the truck, without giving a signal for a right turn, unexpectedly drove into the intersection in front of him, which caused him to think that a collision with the truck would be inevitable if he contiuued on his side of the road, and in order to avoid striking the truck plaintiff turned left and endeavored to cross to the west side of Route 147. Before he could get across he was struck by an automobile owned by the State and driven by C. S. Mullen, Jr., traveling south in the southbound lane, resulting in serious and permanent injuries, for which he claims damages.

The testimony for defendants presents quite a different story. Phillips, the operator of the truck, testified that he was traveling west on Cherokee Road; that when he reached its intersection with Route

147 he, in obedience to the stop sign erected in the center of Cherokee Road on or near the hard surfaced part of Route 147, stopped two to three feet east of the hard surface of Route 147, with his truck partially turned to the right as he expected to go north on Route 147. As he stopped, or within a few seconds thereafter, two motor vehicles passed going north. He looked to his left and saw plaintiff's car approaching from the south around a curve, which later measurements indicated to be 1089 feet south of the intersection. He glanced to his right, and seeing that there was no traffic in the northbound lane of Route 147, drove into the intersection, and as he did so he again looked left and saw plaintiff's car approaching from the south approximately 750 feet away. After he had completed the turn and was traveling north in the northbound lane of Route 147 he saw through his rear view mirror that the plaintiff was then approximately 250 feet from him and approaching rapidly. He became alarmed at the closeness of plaintiff's car and the speed at which it was traveling, and in order to avoid being struck from the rear he turned on the right shoulder and stopped his truck 221 feet from the center of the intersection. As he was turning off the hard surface he saw the plaintiff make a sharp turn to the left into the southbound lane and collide in that lane with the car operated by C. S. Mullen, Jr. Both cars came to rest partly on the shoulder and partly on the hard surface.

C. S. Mullen, Jr., testified that he was *en route* to Lynchburg, had crossed the Hugenot bridge and as he was going up the hill, or had reached its crest, on the south side of the James River he saw two motor vehicles, one behind the other, in the northbound lane, approaching him from the south: "and almost simultaneously with the meeting of those vehicles I saw the one in the rear pull out and come across onto my side of the road." He applied his brakes and turned right, but was unable to avoid the collision. After the accident he saw defendants' truck standing still on the right shoulder of the highway about opposite the point of collision.

State Trooper P. A. Johnson lives on Hugenot Road near the scene of the accident. He heard the noise of the collision and immediately went to the scene. He took pictures of the scene, including the highway, and the cars before they were moved. He testified that the highway was littered with gravel on the shoulder on the west side, and the point of the impact was near the edge of the west side of the road. The photographs indicate that plaintiff's car was on the shoulder facing northwest, and Mullen's car was partly on the hard

surface and shoulder facing southwest. The photographs also show defendants' truck stopped on the right or east shoulder of the highway. Other witnesses stated that the truck was opposite the scene of the accident and nine feet from the eastern edge of the hard surface.

State Trooper J. C. Douglas testified that he arrived at the scene of the accident about 9 A. M.; the weather was clear and the highway dry; none of the three vehicles had been moved, and the point of impact was 73 steps north from the stop sign on Cherokee Road. Measurements made with a tape by engineers called as witnesses indicate that the point of impact was 220 feet from the center of the intersection and that defendants' truck was stopped on the shoulder 221 feet from the stop sign.

█ Plaintiff concedes that the testimony for defendants is sufficient to support the verdict of the jury, but he contends that the judgment should be reversed and a new trial awarded because several erroneous instructions were given over his objection. Plaintiff concentrates most of his attack upon Instruction No. F. This instruction reads as follows:

"The Court instructs the jury that the defendant, Phillips, after stopping at the intersection of Cherokee Road and State Route 147, had a right to proceed and turn into State Route No. 147 under such circumstances that a reasonably prudent person so situated would have concluded that it was reasonably safe to do so, acting under the assumption unless and until the contrary appeared that the drivers of oncoming cars would themselves obey the law and keep their cars under proper control."

Plaintiff's main objection to the instruction is stated to be "it would have misled the jury into believing that the statutory signal for starting and making a right turn could be ignored, if the defendant Phillips, as a reasonably prudent person, thought he could enter the highway with reasonable safety."

This objection is not well taken. It appears from the testimony of the only two eye witnesses of the incidents in or near the intersection that the failure to give the signal was not a proximate cause of the accident. Plaintiff testified that he did not see defendants' truck move from a stopped position. He testified that when he was three or four car lengths from the intersection the operator of the truck "Kind of rocked the truck a little bit, and I don't think it moved an inch. . . . I never did see him start to move out there. It seemed as if he just rocked at first." Plaintiff knew the truck was

facing the intersection. If he did not see the truck when it entered the intersection he would not have seen a signal for a right turn, even if such a signal had been required and had been given. Under his own testimony failure to give the signal was not a proximate cause of the accident. Nor was it if defendants' evidence is accepted, as it must be on the appeal.

Phillips, the operator of the truck and the only other eye witness to these incidents at or near the intersection, testified that when he drove out into the intersection plaintiff's car was approximately 750 feet to his left and that after he completed the turn and had proceeded a short distance in the northbound lane of Route 147 he looked in his rear view mirror and saw the Harvey vehicle was approaching so closely and so rapidly that he deemed it advisable, in order to avoid plaintiff's running into him from the rear, to turn right and leave the hard surface of the highway. The objection to Instruction F is not well taken.

The court gave eighteen instructions which fairly submitted all material phases of the case to the jury. Each and every instruction given is supported by testimony. To discuss each of the plaintiff's objections would entail a needless repetition of well established principles and serve no good purpose.

Plaintiff's next contention is that the court committed reversible error in refusing to consider his motion to set aside the verdict on the ground that a witness summoned by defendants, but not called, had made improper remarks to members of the jury.

The final order of the court overruling plaintiff's motion to set aside the verdict and pronouncing judgment thereon was entered on March 17, 1955. On April 7, 1955, the twenty-first day after final judgment was entered, plaintiff filed with the clerk a paper, designated a motion, to set the verdict aside on the ground stated. On the same date, April 7th, plaintiff served notice on defendants that he, on April 11, 1955, twenty-five days after the date of the final judgment, would present his motion to the court and ask for a hearing thereon. On May 4, 1955, forty-eight days after the date of the final judgment, an affidavit in support of the motion was lodged with the clerk. On May 13, 1955, fifty-seven days after the date of the judgment and within the sixty day period, notice of appeal and assignments of error were received and filed by the clerk. On June 9, 1955, designation of parts of the record to be printed was received and filed by the clerk. On June 29, 1955, the court stated that in its opinion

plaintiff's motion "to set aside the judgment rendered herein was not timely" and overruled it, to which plaintiff excepted. On July 7, 1955, eighty-two days after the date of the final judgment, the notice of appeal and assignment of error based on the refusal of the court to consider the motion to set aside the verdict on the last ground stated was received and filed in the clerk's office.

Formerly the statute, § 17-31, now Rules of Court, § 3:21, prescribed the time within which a final judgment shall remain in the breast or under the control of the trial court. Neither the statute nor the Rule of Court contemplates that the mere filing or lodging of a paper with the clerk would have the effect of extending the time prescribed. The recital of the dates of the different steps taken by plaintiff in this case in an attempt to extend the time of the judgment becoming final shows the necessity of strict compliance with the rule, otherwise a judgment debtor would have the power, by the mere lodging of a motion with the clerk, to postpone indefinitely the time in which a judgment would become final, and this without giving bond or security for the protection of the judgment creditor.

On March 17, 1955, the court disposed of all issues raised by the litigants and entered a final order thereon. Thereafter only the court, by proper order entered within the twenty-one days, was authorized to change or modify the final judgment. The clerk has no such authority. His duties are ministerial. He receives and notes on the papers the dates they are lodged with him. He is not concerned with the legal effect of such papers. The authority and jurisdiction of the court is so clearly stated in the rule that it needs no construction. It provides: "All final judgments, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified or vacated for twenty-one (21) days after the date of entry, and no longer."

While the language of the rule is different from the language of the former statute (17-31) their intent and purpose are the same, namely, the expeditious final determination of all litigation. We discussed the statute in *Bridges* v. *Commonwealth*, 190 Va. 691, 58 S. E. 2d 8, and at page 700 of Virginia Report said:

"Our conclusion is, that when an order or decree has been entered, which in contemplation, substance and effect measures up to a final judgment or decree, then the trial court loses all further jurisdiction and power to reopen and change that order or decree, unless within fifteen days after its entry and during the same term of court at

which it was entered, an order or decree is actually entered, which by reasonably sufficient language undertakes to and makes evident the purpose and intent of the court to further consider and adjudicate upon the matter or matters decided and determined as announced and recorded in and by the judgment or decree in question."

The judgment of the trial court is

*Affirmed.*