**Terry Joel ADAM et al., Relators,**

v.

**Honorable Wells STEWART, et al., Respondents.**

**No. 1638.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 18, 1977.

Rachel Johnson, Pasadena, Richard E. Anderson, Houston, for relators.

Harry L. Tindall, Houston, for respondents.

J. CURTISS BROWN, Chief Justice.

Mary Adam (respondent or Mrs. Adam) filed for divorce in July, 1975. In August of that year Terry Adam (relator or Mr. Adam) cross-acted for divorce and for managing conservatorship of the children of the marriage. A jury fee was paid by Mrs. Adam shortly thereafter. An attorney ad litem was appointed for the minor children, a social study ordered, and temporary orders entered relating to custody, alimony and support.

Over the objection of respondent the court conducted an abbreviated hearing on April 19, 1976 concerning what the court termed a "divisible divorce." He purported to act on the basis of Tex.R.Civ.P. 174(b) on his own motion. The court ruled: "All right, grant the divorce." This hearing on

the "divisible divorce" was conducted without a jury despite the fact that one had been demanded.

A jury trial was conducted thereafter in another separate trial relating to custody on September 1, 1976. During the course of it the court instructed the jury as follows:

I believe in divisible divorce. I have tried the logical components. Some judges think you should divide the property before you grant a divorce.

I have heard evidence about irreconcilable differences back in April 1976. At that time, I granted them a divorce. That means they can go any place, after I sign a Decree, and get married; or whatever they want to do. They are divorced, as far as that goes.

I feel the logical components are the first issue as to whether or not there should be a divorce.

The second issue is who should be made managing conservator. That affects the issue of property.

Property is usually 97 percent for the Judge to decide.

He decides the divorce. You decide the conservatorship. I decide the property. Then, child support becomes relevant.

Counsel is correct. What I maintain is that I am also correct. They have been divorced.

One further thing. To completely reflect what happened. For some unknown reason, there has not been an Order for me to sign.

If I divorce somebody back in January, and I do not physically sign the piece of paper—they don't bring it to me for eight months—the law is that they still got divorced back in January. The record I did was adminsterally (sic) act.

As far as I am concerned, you cannot answer, "We were divorced" without saying everything I have just said. I want the jury to be instructed on that.

They can go out and get married again. They are divorced to that extent   .  . .

As the above statement by the court indicates no written judgment reflecting the "divisible divorce" was entered at the time of the jury trial of custody issues. The state of affairs continued until April 11, 1977 when the court entered its "Interlocutory Decree Of Divorce" which included the recitation: "This order signed on the 11th day of April *1977*, but effective from April 19, *1976*." [Emphasis added.]

There is an indication that many formal hearings have been held. A master has been appointed to hear evidence in connection with a division of the property. The case has, in effect, proceeded on a piecemeal basis including: (1) hearing and issuance of temporary orders on custody, support and maintenance; (2) some discovery proceedings; (3) the separate hearing on divorce issues as set forth above; (4) hearing on custody issues; (5) appointment of a master to hear evidence on property matters; and (6) other incidental proceedings before the court.

Relator has instituted this original proceeding under Tex.Rev.Civ.Stat.Ann. art. 1824 (1964) for a writ of mandamus to compel the trial court to set aside the divorce purportedly granted on April 19, 1976, and to proceed to jury trial and judgment on the entire case.

Article 3.63 of the Family Code provides: "In a decree of divorce or annulment the court *shall* order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." [Emphasis added.] We agree with the San Antonio Court of Civil Appeals in *Reed v. Williams*, 545 S.W.2d 33 (Tex.Civ.App.—San Antonio 1976, no writ) that this provision is mandatory. When the jurisdiction of the divorce court is invoked by the pleadings of either spouse the court must decree a division of the property. *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299, 302 (1960). The trial court may not sever the property division from the divorce action. *Reed v. Williams*, 545 S.W.2d at 34; *Angerstein v. Angerstein*, 389 S.W.2d 519, 520–21 (Tex.Civ.App.—Corpus Christi 1965, no writ).

To permit the granting of a valid "interlocutory" divorce before entry of final judgment in a divorce case would create chaos and many problems. For example, after a "divorce", does a trial court still have *discretion* to order a division of the estate as the court may deem "just and right", or must it divide equally the community property of the parties held as tenants in common? After a "divorce", may the court continue to impose upon the husband a requirement to pay temporary alimony? In the event of a remarriage of either or both of the parties following such a "divorce", does the accumulation of property in the interim between the divorce and the final adjudication accrue to the benefit of the estate of the parties in litigation or to the community estate of the current marriage? In the event a spouse remarries following such a "divorce" and the subsequent marriage results in the institution of a suit for divorce in a different jurisdiction, which court has dominant jurisdiction? Many other similar problems would be presented.

■ While we readily conclude that the court's action in granting an "interlocutory divorce" purportedly authorizing the parties to remarry before the entry of a final judgment is error, it is not so clear that relator is entitled to the issuance of a writ of mandamus. In *Williams v. Stewart*, 525 S.W.2d 710 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ) the trial court dismissed a suit against the natural father of a minor child seeking support for an illegitimate child. The United States Supreme Court had previously held in *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) that Texas could not discriminate between legitimate and illegitimate children with respect to the issue of support. It was clear that the court had erroneously dismissed the suit; however, we declined to issue the writ of mandamus. We had the power under Tex.Rev.Civ.Stat.Ann. art. 1824 (1964) to order the trial court to proceed to trial and judgment, but we could not require the trial court to exercise discretion in any particular manner. When the case reached us on direct appeal, we concluded that the domestic relations court

clearly had jurisdiction to hear cases in which illegitimate children sought support under *Gomez v. Perez, supra,* Tex.Rev.Civ. Stat.Ann. art. 2338–5 § 3 (1971), and the Texas Family Code. Therefore, we reversed and remanded the judgment of dismissal. *Williams v. Shields*, 531 S.W.2d 383 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). In *Boswell, O'Toole, Davis & Pickering v. Stewart*, 531 S.W.2d 380 (Tex. Civ.App.—Houston [14th Dist.] 1975, no writ), the relator sought a petition for mandamus under the provisions of article 1824 in a cause in which relator had been seeking to recover attorney's fees for services rendered the wife from both parties to a divorce case. We held that by refusing to act on the merits of the action over which it had taken jurisdiction, the trial court had effectively refused to proceed to trial and judgment. Therefore, we found that the order of the court amounted to a refusal to proceed to final judgment in a case in which it had taken jurisdiction and was subject to the issuance of a writ of mandamus. *Cf. Jefferson County v. Farris*, 476 S.W.2d 457 (Tex.Civ.App.—Beaumont 1972, no writ).

Thus, the fine line is drawn as to whether the trial court's action here amounts to a refusal to proceed within the meaning of *Boswell, O'Tolle, Davis & Pickering v. Stewart, supra,* or whether the court has acted, although erroneously, as in *Williams v. Stewart, supra.* This court, unlike the Supreme Court of Texas, does not have the authority to issue writs of mandamus other than as may be authorized by statute. *See Standley v. Stewart*, 539 S.W.2d 882 (Tex. Sup.1976).

■ Although proceeding piecemeal, improperly and tortuously, the respondent judge has not refused to proceed. On the contrary, like the man on horseback, the court has ridden off in all directions. We are not authorized under the provisions of article 1824 to direct him to do otherwise. We are not unmindful that the San Antonio court in *Reed v. Williams, supra,* in a case somewhat similar to the one at hand, issued

a writ of mandamus in a case in which the trial court had severed the property division from the divorce judgment and had postponed division of the community estate. By contrast, in this case the respondent judge has not declined to divide the community property but has appointed a master to begin the process of such division. Our doubts concerning the wisdom of this step and the resulting protracted litigation does not authorize us to order otherwise.

Petition denied.