THIGPEN, Judge.
This case involves post-divorce proceedings.
Ivan Lionel Hand, Jr. (father), and Rebecca R. Hand (mother) were divorced in Virginia in 1986. Subsequently, the father moved from New Jersey to England for employment reasons, and the mother ultimately moved to Birmingham, Alabama. The Virginia divorce judgment incorporated a separation and property settlement agreement (“agreement”) of the parties which provided that custody of the parties’ two minor children be granted to the mother, with the father having liberal and specified visitation. Also pursuant to the agreement, the divorce judgment provided, inter alia, that the father pay $550 per month per child to the mother as child support.
In May 1991, the father filed in the Circuit Court of Jefferson County a petition for rule nisi and for a modification, requesting, inter alia, that the mother be held in contempt for noncompliance with the visitation order and requesting a modification of the visitation schedule. The father also requested an attorney’s fee for the prosecution of his petition. The mother answered and filed a counter-petition for modification, requesting an increase in child support and maintenance, and requesting that the father pay her attorney’s fee.
The father answered the mother’s counter-petition by substantively denying its allegations. He later amended his answer by stating:
“That paragraph 3(B) of the Agreement of the Parties incorporated in and made a part of the Final Judgment of Divorce in this cause provides that upon filing of a Petition for Modification of Child Support, that each party shall be responsible for his or her own attorney’s fees.” (Emphasis in original.)
*1042 In March 1992, the trial court entered an order finding that the original visitation schedule was “working a hardship on the parties and the minor children.” Consequently, the trial court modified the visitation schedule, granting the father the following: six weeks each summer at a time to be selected by the father, one week each Christmas beginning on December 26, four days of each spring school holiday, and “[a]ny other times the [father] is in the town in which the minor children reside for periods not to exceed two days and nights.” Also, the trial court increased the amount of child support to be paid by the father to $1,500 per month. All other relief requested by either party was denied, and the remaining provisions of the judgment were ratified and confirmed. Finally, the trial court ordered that the father pay $3,000 to the mother for an attorney’s fee.
Following the denial of his motion to alter or amend the order of the trial court, the father appeals. The father raises the following issues: 1) whether the trial court abused its discretion by restricting visitation with his children to 48 hours during periods in which he travels from England to the city where the children reside; 2) whether the attorney’s fee award to the mother was a violation of the full faith and credit clause of the Constitution of the United States; and, 3) whether the attorney’s fee award was an abuse of discretion.
The judgment of a trial court in a divorce case presented ore tenus is presumed to be correct until it is shown to be plainly and palpably wrong or unjust. Ex parte Jackson, 567 So.2d 867 (Ala.1990). Furthermore, the trial court has broad discretion in a divorce case, and its decision is not to be overturned unless it is palpably wrong or is unsupported by the evidence. Jackson, supra.
Concerning the father’s first issue, we note that the determination of visitation rights for a noncustodial parent is a matter which rests within the sound discretion of the trial court, and the primary consideration in making such a determination is the best interests and welfare of the child. Ladewig v. Moxley, 589 So.2d 738 (Ala.Civ.App.1991).
The videotaped record revealed that, at the time of trial, the father lived in England and was employed by Esso Petroleum, while the mother and the parties’ minor children lived in Birmingham, Alabama.
The father contends that the 48-hour visitation period is insufficient because he must travel 5000 miles, spending approximately $1,800 round-trip airfare, for each visit with his children. Accordingly, the father contends that the trial court abused its discretion by not providing more liberal visitation with respect to these occasions.
Despite the cost and distance surrounding the father’s visitation, we cannot find that the trial court abused its discretion in limiting this particular visitation period to two days and nights. As mentioned previously in Ladewig, supra, the trial court’s primary consideration is the best interests and welfare of the children, not the father. The mother indicated that she was concerned about the children being kept out of school by the father if this particular visitation period extended for more than two days and became a “long weekend.” In fact, the mother testified that the father had caused the children to miss school while the terms of the original decree were in effect. In light of the foregoing, we find no error regarding this portion of the trial court’s judgment.
Concerning the father’s second issue, we note that the Constitution of the United States, Article IV, Section 1, directs that “[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.” Also, our Supreme Court recognizes that the judgment of another state which has subject matter and in personam jurisdiction is entitled to full faith and credit in the courts of Alabama. Morse v. Morse, 394 So.2d 950 (Ala.1981). The law of the state which rendered the judgment determines the validity and effect of such a foreign judgment. Morse, supra. Our Supreme Court also has stated, however, that “[n]o state need give more full faith and credit to *1043 a judgment than that judgment would receive in the state that rendered it.” Ex parte Dean, 447 So.2d 733, 735 (Ala.1984).
The determinative question regarding the father’s second issue, therefore, is whether Virginia law would enforce, if necessary, the provision in the agreement concerning attorney’s fees in child support and maintenance matters. The agreement, which was incorporated into the divorce judgment, states the following:
“(B) The first available year for an increase or decrease in child support and maintenance payments shall be on or after July 1, 1991. Each party shall be responsible for his or her attorney’s fees in this matter." (Emphasis added.)
We note that the only issue raised here concerns the trial court’s award of attorney’s fees following the increase.
Section 20-109.1 of the Code of Virginia reads, in pertinent part, as follows:
“Any court may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce ... any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree. The provisions of this section shall apply to any decree hereinbe-fore or hereinafter entered affirming, ratifying and incorporating an agreement as provided herein.” (Emphasis added.)
Although our research has not revealed any Virginia case law exactly on point with the present case, the principles derived from the following cases suggest that the attorney’s fee provision in the agreement as incorporated into the divorce judgment would be enforced by Virginia courts.
In Parra v. Parra, 1 Va.App. 118, 336 S.E.2d 157 (1985), a husband and wife each filed for divorce and later entered into an agreement regarding the disposition of certain marital and jointly owned property. Following a hearing, the trial court awarded certain property in accordance with the agreement, but awarded certain other property in a manner expressly contrary to the agreement. In reversing the trial court’s decision, the Court of Appeals of Virginia stated the following:
“Virginia’s equitable distribution statute does not specifically state whether the court must honor a property settlement agreement presented to it. However, it has been recognized in Virginia that ‘marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.’
“Furthermore, Code § 20-109, referred to in Code § 20-107.3(H), provides that where the parties have entered into a contract and such contract is filed with the pleadings, ‘no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.' (emphasis added [in Parra]).
“When the two statutes are read together, it is apparent that the legislature intended to impose the same restrictions on a court in making an equitable distribution award as exist in making awards of support and maintenance. Specifically, to the extent that the parties have already stipulated to a particular disposition of their property, the court may not decree an equitable distribution award that is inconsistent with that contract.
“To hold otherwise would not only fail to give full effect to the property division statutes, but also would fail to support Virginia’s public policy in favor of prompt resolution of property disputes in *1044 divorce cases through voluntary court-approved agreements. If divorce litigants know that they may repudiate, with impunity, valid property settlement agreements in hopes of getting a better result from the court, or because they no longer wish to honor their commitments, the usefulness and validity of all such contracts will be lessened.
“In the case before us, the parties agreed to a disposition of their home and their condominiums. Both were represented by counsel and, in the contract, both promised not to attempt to assert a claim to the other’s share of the proceeds. We see no reason why the court should allow a party to avoid the consequences of a valid contract. Nothing in the equitable distribution statute mandates such a result.
“This conclusion does not bind a court to incorporate such a contract into its decree if one of the parties has since repudiated its provisions. The decisions whether to incorporate a contract and whether to recognize its provisions involve different concerns. Incorporation does nothing more than allow the court to enforce the contract through its contempt powers pursuant to Code § 20-109.1. It is not a prerequisite to the binding effect of the contract as between the two parties. While nothing prevents either party from challenging the validity of the contract, such determinations should be measured by the same standards used for judging the validity of any contract. The fact that the subject matter is disposition of marital property does nothing to deprive the agreement of its contractual dignity.”
Parra, 1 Va.App. at 128-129, 386 S.E.2d at 162-63. (Citations omitted.)
Although Parra dealt with the distribution of property, we note that the Court of Appeals of Virginia equated the restrictions on a trial court’s award of support and maintenance involving the application of an agreement with restrictions on such property distributions, and then discussed the rationale behind enforcing the agreements of parties in domestic relations cases. Also, the language of Code § 20-109, as quoted in Parra, 1 Va.App. at 128, 336 S.E.2d at 162, is identical to certain language of Code § 20-109.1, in stating that a trial court’s decree “establishing or imposing any other condition or consideration, monetary or nonmonetary,” must be in accordance with an agreement of ■ the parties.
Virginia case law has held that property settlement agreements are contracts and, as such, are subject to the same rules of formation, validity, and interpretation as are other contracts. Smith v. Smith, 3 Va.App. 510, 351 S.E.2d 593 (1986). Also, in Rook v. Rook, 233 Va. 92, 353 S.E.2d 756 (1987), the Supreme Court of Virginia stated that an ex-husband’s attack upon the validity of a property settlement agreement on the grounds that it was against public policy should have been raised before the divorce was entered or within 21 days thereafter.
The record in the present case disclosed no history of attack by either party upon the validity of the agreement. Since the agreement’s provision concerning attorney’s fees as to child support modification apparently is enforceable under Virginia law, we hold that the provision must be given full faith and credit in the courts of Alabama, as mandated by the Constitution of the United States and by Morse, supra.
We note, however, that this proceeding was initiated by the father and that the mother defended against his rule nisi and visitation modification petition and, as well, prosecuted her counter-petition for an increase in child support. Since, by agreement, each party in this case is responsible for his or her attorney’s fees in child support modification matters, only that amount allocated to the mother’s defense of the father’s petition is assessable against the father. Because we cannot determine what amount, if any, of the attorney’s fee award is designated for the modification matter, we must reverse and *1045 remand for the trial court to make this determination. Additionally, because of the lack of specificity regarding the separate amounts of the attorney’s fee award, we cannot address the father’s final issue.
The mother’s request for an attorney’s fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and RUSSELL, J„ concur.