UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Petty and Senior Judge Annunziata
Argued at Chesapeake, Virginia


GEORGE TSOUCALAS

MEMORANDUM OPINION* BY
v.       Record No. 1560-12-1           JUDGE WILLIAM G. PETTY
                                        MAY 7, 2013
DIMITRA TSOUCALAS, N/K/A
 DIMITRA C. MARKOPOULOS


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Walter G. Ford, Judge

Lawrence D. Diehl (Brandy M. Poss; Barnes & Diehl, on briefs), for
appellant.

Kim M. Mattingly (John H. Kitzmann; John E. Davidson; Davidson &
Kitzmann, on brief), for appellee.


George Tsoucalas ("husband") appeals the trial court's decree of divorce and final order

dissolving his marriage to Dimitra Tsoucalas ("wife").  On appeal, husband presents two

assignments of error:  (1) the trial court erred in granting wife an equitable distribution award of

$135,000 for her contributions to construction of husband's home; and (2) the trial court erred in

denying husband reimbursement for household expenses pursuant to a clause in the parties'

prenuptial agreement.  We affirm the trial court's denial of household expenses, but reverse the

equitable distribution award of $135,000.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, we view the evidence in the light most favorable to . . . the party prevailing below, 'and grant all reasonable inferences fairly deducible therefrom.'" Johnson v. Johnson, 56 Va. App. 511, 513-14, 694 S.E.2d 797, 799 (2010) (quoting Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999)). However, we review prenuptial agreements *de novo*, and are not bound by the trial court's interpretation of the contract provisions at issue. Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003).

II.

Although husband presents numerous arguments in support of his position, we find that the parties' prenuptial agreement controls and resolves both of the questions presented, and confine our analysis to the contract. The agreement bars the equitable distribution award granted to wife and the household expenses reimbursement sought by husband.

Prenuptial agreements "are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002). On appeal, we defer to a trial court's findings of fact. But we interpret the language in premarital agreements and other contracts *de novo*, as this Court has "an equal opportunity to consider the words of the contract within the four corners of the instrument itself." Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006). A binding prenuptial agreement limits the discretion of a court to award property on divorce. "[T]o the extent that the parties have already stipulated to a particular disposition of their property, the court may not decree an equitable distribution award that is inconsistent with that contract." Parra v. Parra, 1 Va. App. 118, 128, 336 S.E.2d 157, 162 (1985); see also Code § 20-109(C) ("In suits for divorce . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree,

- 2 -

no decree or order . . . establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.").

Thus we look first to the language of the agreement. The parties' agreement is written and signed, in compliance with Code § 20-149, and neither party has argued that it is void or invalid. Although poorly drafted, the provisions of the agreement, read together, are sufficient to resolve the issues before the Court. "Even though an agreement may have been drawn unartfully, the court must construe the language as written if its parts can be read together without conflict." Doswell Ltd. P'ship v. Virginia Elec. and Power Co., 251 Va. 215, 222-23, 468 S.E.2d 84, 88 (1996). In reviewing the agreement as a whole, it is clear that the parties intended to create a comprehensive agreement to govern their financial dealings during and after marriage. The overarching intent of the agreement is to ensure that the parties' separate property, including property acquired after the marriage, would remain separate, with the exception of a small category of assets identified as "community property." Section 2.01 of the agreement, entitled "Intention of the Parties" states

> The parties intend and desire that all property owned by either of them at the time of their marriage and all property that may come to either of them by gift, devise, or descent during their marriage be clearly identified as their respective separate property, and that other such property coming to either of them during their marriage will be their respective separate property. Both parties have the general intent to retain and have sole management, control, and disposition of their separate property and of any income from and increases in kind or in value of such separate property.

There are several provisions that clarify what is "separate" and what is "community" property, and one that adopts the same terminology to describe how property is to be distributed

on divorce.[1]  Other provisions address child custody and bar spousal support.[2]  We review the questions presented in light of this framework, and, because neither party has argued that the contract is ambiguous, we apply the plain and unambiguous meaning of the words the parties used in their contract.

## A.  Equitable Distribution Award

Husband argues that the trial court erred in granting wife an equitable distribution award of $135,000 for her contributions to the construction of husband's home.  We agree.  Although wife made significant financial contributions to the home, the prenuptial agreement states that the home and any increases in its value are husband's separate property, and bars reimbursement of her funds in equitable distribution.

When the parties met, husband was in the process of building a new house at Wildwood Lane in Williamsburg.  The house was completed shortly after the wedding, and the parties lived there for most of the marriage.  Both parties agree that the Wildwood Lane house is husband's separate property, and it is specifically identified as such in the prenuptial agreement.  The parties also agree that wife contributed $135,000 to the construction of the house.  Wife transferred $70,000 to husband before the marriage and $65,000 afterward.  The testimony conflicted as to why – wife argued that the money was a loan for most of this litigation, while husband said it was a gift, given to fund building modifications wife requested.  The court ruled against wife's loan claims, finding there was insufficient evidence of the alleged oral contracts.  She then sought relief under the commingling provisions of the equitable distribution statute, and was granted an award of $135,000 under Code § 20-107.3(A)(3)(g):

---

[1] See Articles 2, 5 and 7, and § 10.01 regarding separate property; §§ 2.02, 8.01, 10.01, and 11.01 regarding community property; and § 10.01 regarding property distribution on divorce.

[2] See §§ 10.02 and 10.03.

> When the separate property of one party is commingled into the separate property of the other party, or the separate property of each party is commingled into newly acquired property, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, each party shall be reimbursed the value of the contributed property in any award made pursuant to this section.

This award must be reversed as inconsistent with the prenuptial agreement.[3] "[T]o the extent that the parties have already stipulated to a particular disposition of their property, the court may not decree an equitable distribution award that is inconsistent with that contract." Parra, 1 Va. App. at 128, 336 S.E.2d at 162; see also Code § 20-109(C) ("In suits for divorce . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order . . . establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.").

As both parties agree that the home is husband's separate property, the issue then is how wife's contributions are to be classified under the prenuptial agreement, and whether it mandates a particular disposition on divorce. We find that wife's contributions are covered by the provisions of the agreement dealing with increases in value of either party's separate property, and are to be retained by husband.

In holding that increases in the value of husband's home are his separate property under the agreement, we rely particularly on Article 2 of the agreement. Section 2.01 reads: "[b]oth parties have the general intent to retain and have sole management, control, and disposition of

---

[3] In his brief, husband argues that "[t]he court has no jurisdiction to equitably divide money transferred between spouses before marriage." Opening Br. of Appellant at 40. We note that we have previously held that "§ 20-107.3 does not prevent the trial court from considering premarital contributions to the acquisition or maintenance of property later deemed marital in fashioning an equitable distribution." Floyd v. Floyd, 17 Va. App. 222, 226-27, 436 S.E.2d 457, 460 (1993). Here, however, we are not concerned with the authority granted to the trial court by § 20-107.3, but rather the intent of the parties as expressed in their agreement.

their separate property and of any income from and increases in kind or in value of such separate property . . . ."; § 2.02 states that "[a]ll future income from and increase in kind or in value of each party's separate property will constitute the separate property of that party."

This analysis is not affected by the fact that the increased value in question is attributable to wife's financial contributions. On this point, we find the language of § 7.01 especially helpful. It makes it clear that an increase in the value of husband's separate property is not subject to reimbursement or any other claims by wife:

> Any interest in such income or increases that is yielded by the separate property . . . of each such party . . . [is] hereby released, relinquished, and renounced by the other party . . . . The parties specifically release and waive any rights of and claims for reimbursement now existing or arising in the future among the estates of the parties.

By this provision, wife renounced any interest she may have had in the increase in value of husband's home. Moreover, she "specifically release[d] and waive[d] any rights of and claims for reimbursement" in the same section. This is precisely the nature of wife's equitable distribution claim under Code § 20-107.3(A)(3)(g). The language of the statute creates a claim for "reimbursement," and she has waived it in unequivocal language.

Finally, § 10.01 details how the parties' property is to be distributed on divorce:

> [E]ach party is to retain his or her separate estate as his or her separate property . . . . All community property is to be divided equally between the parties according to its value. To effect this provision, the parties relinquish and disclaim any right they may have to seek a division of their property other than in accordance with this paragraph . . . .

The court's equitable distribution award of $135,000 is not consistent with the language of § 10.01. The increase in the value of the house is husband's separate property, and § 10.01 mandates that it be retained by him upon divorce. And by requesting equitable distribution, wife

- 6 -

seeks "a division of their property other than in accordance with [that] paragraph." Wife is barred from making such a claim under the agreement.

By the terms of the prenuptial agreement, the house at Wildwood Lane, and any increases in value thereto, are husband's separate property. It is to remain husband's property on divorce, and is not subject to reimbursement or other equitable distribution claims by wife.[4]

## B. Household Expenses

Husband also argues that he should be reimbursed for part of the money he spent on household expenses during the marriage, because of a clause in the agreement requiring both parties to pay an equal share of these expenses. We disagree, and find the remedy husband seeks is not authorized by statute or the prenuptial agreement.

Husband's argument is premised on § 11.01 of the agreement, which reads:

> The parties will maintain a joint bank account to be designated "Household Account" and to be used for this purpose. The funds included in this account from time to time are to be community property or to be treated as such for the purposes of this agreement. All assets acquired with any such funds and all revenues so acquired from such property will likewise be, or be treated as, the community property of this marriage. These community funds will be used for day-to-day living expenses, such as food, clothing, medicine, and transportation, or as the parties may otherwise agree. All household expenses are considered to be the community

---

[4] Our analysis is supported by the fact that Virginia law did not provide for the tracing and reimbursement of "separate-to-separate" contributions when the agreement was created. "The law effective when the contract is made is as much a part of the contract as if incorporated therein." Hering v. Hering, 33 Va. App. 368, 374-75, 533 S.E.2d 631, 634 (2000) (citing Paul v. Paul, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974)). Even an unambiguous agreement must be interpreted with reference to the relevant body of law, just as each word and phrase is read in the context of the entire agreement. Here, the agreement was signed on February 13, 2006, and Code § 20-107.3(A)(3)(g) did not become effective until July 1 of that year. Thus, at the time the parties entered into the contract, there was no statutory authority by which wife's contributions to the home could retain their character as her separate property. See also Fowlkes v. Fowlkes 42 Va. App. 1, 9, 590 S.E.2d 53, 56-57 (2003) (finding wife's home was separate property not subject to equitable distribution, despite husband's financial contribution to the construction of an addition).

> obligations of this marriage. Such expenses will be equally met by
> both parties regardless of the actual source of the funds.

No joint bank account was ever established, and it is not entirely clear how the parties defined "household expenses." Husband is now asking the court to conduct an accounting of all "household expenses" paid by each party during the marriage, and order reimbursement for anything he contributed in excess of his 50% share.

There is no statutory authority for a court to order the accounting and reimbursement husband requests. See Lapidus v. Lapidus, 226 Va. 575, 578, 311 S.E.2d 786, 788 (1984) ("[J]urisdiction in divorce suits is purely statutory, and cannot be acquired by the courts inferentially or through indirection."). The issue is whether, in the context of this agreement, the trial court is compelled[5] to grant such a remedy by the final two sentences of § 11.01. We find that it is not.[6]

Reimbursement of household expenses would directly conflict with § 7.01 of the agreement. Section 7.01 says "all property . . . that is the product of their respective time, talent, efforts, or labor constitute the separate property of the party . . . whose time, talent, efforts, or labor produces such income or increases." In other words, income earned by wife during the marriage is her separate property. It goes on to say that "any interest in such income . . . [is] relinquished" by the other spouse and that "the parties specifically release and waive any rights

---

[5] We do not reach the question of whether a properly drafted premarital agreement could *ever* give a court the authority to grant this remedy in a divorce proceeding.

[6] The trial court held § 11.01 was void because the parties never established the joint account. We do not agree that the entire provision is waived on this basis, but affirm the trial court's ruling for the other reasons it identified on the record. In addition to finding the household expenses provision void, the court correctly noted that the lack of a joint account left it with no assets or debts to distribute. Because there was no bank account, or assets traceable to such an account, there was no "community property" created under this provision. With no assets or debts to classify as "community" or "separate" property, there was nothing for the court to do under the divorce statutes or the language of the prenuptial agreement.

of and claims for reimbursement." The plain language of this section bars the court from ordering wife to reimburse husband from her separate funds.

Husband's interpretation would also place § 11.01 in conflict with both the agreement's overall scheme of "separate" and "community" property and § 10.01, which deals with property division on divorce:

> [E]ach party is to retain his or her separate estate as his or her separate property following the dissolution. All community property is to be divided equally between the parties according to its value. To effect this provision, the parties relinquish and disclaim any right they may have to seek a division of their property other than in accordance with this paragraph . . . .

By the terms of this provision the parties explicitly limited their property remedies on divorce. Husband disclaimed the right "to seek a division of their property other than in accordance with [that] paragraph." The remedy he requests is not in accordance with that paragraph; therefore, it is not authorized by the agreement. Moreover, any cash award to husband would necessarily be satisfied from wife's separate property. The terms of the agreement state "each party is to retain his or her separate estate as his or her separate property following the dissolution." Thus, the court may not order either party to make the requested reimbursement payments from their separate funds.

Husband argues that the parties would not enter into an obligation with the presumption that it is unenforceable. However, our holding here is simply that the remedy husband seeks is not available in a divorce proceeding. The Court will not attempt to retroactively enforce one provision by fashioning a remedy that conflicts with the plain language of other parts of the agreement. Such an order would be in violation of Code § 20-109(C).

Because the remedy husband seeks is not authorized by the statute, and conflicts with the plain language of the prenuptial agreement, he is not entitled to an accounting and reimbursement of household expenses.

C.  Attorney's Fees

Finally, both parties seek an award of attorney's fees incurred on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear.  The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

After considering the record, we do not deem either party's appeal to be frivolous or see other sufficient reasons to justify an award of attorney's fees.  Therefore, we decline to grant attorney's fees to either party.

III.

For the foregoing reasons, we affirm in part, reverse in part, and remand for entry of an order consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.