**Warren HUTT, Appellant,**

v.

**CITY OF ROCKSPRINGS, Appellee.**

**No. 1017.**

Court of Civil Appeals of Texas, Tyler.

May 26, 1977.

Rehearing Denied June 23, 1977.

C. H. Gilmer, Rocksprings, for appellant.

Robert M. Huey, McCreary & Huey, Austin, for appellee.

McKAY, Justice.

This case arises from a suit by the appellee, City of Rocksprings (the City) against appellant, Warren Hutt (Hutt) and R. M. Hutt, who is not a party to this appeal, for collection of delinquent taxes alleged to be due by them. The defendants answered that the City had "adopted and used an illegal, wrongful, arbitrary, discriminatory and confiscatory system of rendering and assessing taxes," claiming that almost all the personal property subject to taxation by the City was omitted from taxation and that because of this "the defendants have suffered and will suffer and be assessed an excessive amount of tax, all of which is unlawful and discriminatory on the part of plaintiff and these defendants say that such excess is the sum of 30% . . . ." Upon conclusion of the testimony it was agreed by counsel, with concurrence of the court, that the case be withdrawn from the jury and determined by the court, resulting in a judgment for the City in the amount of $1,173.64. No findings of fact and conclusions of law were requested or filed.

Appellant brings four points of error. Point one in substance complains that the trial court erred in granting judgment for the City and overruling Hutt's motion for new trial because the "uncontroverted evidence completely and conclusively establishes that none of the personal property in the City of Rocksprings [with a few exceptions] subject to taxation during the years in question was rendered for taxes . . . ," and because the City Tax Assessor-Collector Barbara Lomax admitted that a person rich in personal property but owning no land would not pay any tax if he did not render the property, the appellant claiming that such was in "direct contravention of constitutional and statutory provisions for equality and uniformity of taxation." Points two, three and four complain of the trial

court's failure to grant continuances because of the absence of two subpoenaed witnesses and Hutt, who at the time of trial was required to carry out his duties as a justice of the peace. We will first view the evidence in light of point one.

Upon trial the chief witness was Mrs. Barbara Lomax, the City Tax Assessor-Collector. Mrs. Lomax admitted that she did not obtain individual personal renditions of property year by year, that she did not have the taxpayers sign a rendition form, and that the property was only valued at 30% of market value. She testified that she copied the valuations on the tax rolls from one year to another and that the only additions to the rolls were (1) sales of land taken from the deed records, and (2) improvements based on the owner's statement of "cost per remodeling". The personal property on the tax rolls consisted mainly of grocery store inventory, certain fixtures, and other items voluntarily rendered. No automobiles were on the rolls. Mrs. Lomax indicated that she had no idea of the total value of personal property in the city that was not on the tax rolls, but that it was "possible" that the inclusion of such would double the total valuation of the property already on the rolls. She also gave the following testimony:

"Q I will—at any rate what I am talking about—let's just assume that we have a man that lives here in Rocksprings, and he has for quite a while. He rents a house. He has got a lot of furniture in it—expensive furniture. He has got a nice car. He has got a pick-up. He is a man that goes around and does work —electrician, perhaps a lot of tools and equipment—supplies. He wouldn't pay a nickle [sic] city tax, would he?

"A Not personal.

"Q Not himself?

"A No, sir.

"Q Now, the man that owned the house, he would rent it and pay taxes on it?

"A Yes, sir.

"Q Here we have a man that is making a living, sending his children to school, say living in a nice house, got all of this property, making a lot of stuff that he uses in his work; he wouldn't render anything if he didn't own land, would he?

"A No, sir."

As to the value of other real property in the city, Mrs. Lomax testified that the house of "Jimmy's mother," apparently meaning her mother-in-law was valued at "far above 30% of what it should be" and that she thought it was valued at $2,000.00. E. W. Snearly, a former mayor of the City testified that he had paid $5,000.00 for certain property in 1965, that it was originally valued at either $2,000.00 or $2,500.00 and had been raised $500.00, and that he figured "it is worth twice as much as when I bought it." Hutt testified that according to his memory and tax renditions entered into evidence, that originally a building he owned was valued at $3,000.00 and his home was valued at $2,250.00; that he had protested these values based upon the value of a similar building, by crossing out the values, writing $2,500.00 and $2,000.00, respectively, on the rendition form and signing it; and that the Board of Equalization had changed the amounts back to the original values. Hutt admitted that the only personal property he owned that was rendered was some printing machinery.

■ In our opinion it is was improper and discriminatory for the City to omit from assessment almost all personal property except that which was rendered. *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378, 380 (1955); *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414, 416–417 (1954); *Bynum v. Alto Ind. Sch. Dist.*, 521 S.W.2d 656, 658–659 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). It appears a deliberate decision was made to omit personal property items from the tax rolls. It was said in *City of Arlington v. Cannon*, supra:

"The deliberate adoption of a plan for the omission from the tax rolls of a large volume of property, personal or real, is in direct contravention of constitutional and statutory provisions for equality and uni-

formity of taxation. Article VIII, Section 1, Constitution of Texas, Vernon's Ann.St.; Article 7174, Vernon's Annotated Civil Statutes, 1925. . . .

" . . . Once such a plan is put into effect the litigant may defeat the recovery of taxes only to the extent that they are excessive, and he must assume the burden of proving excessiveness. . . 'Thus, the fact that other property in the city was not assessed for taxation presents no defense to the suit against petitioner for taxes not shown to be within themselves excessive.' "

■ However, even though it has been shown that the scheme was an illegal one, appellant here cannot gain relief unless he shows that such scheme worked to his substantial injury. *Whelan v. State*, supra; *City of Arlington v. Cannon*, supra; *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569, 573 (1954); *Bynum v. Alto Ind. Sch. Dist.*, supra. He must prove that because of the illegal plan his taxes are excessive or substantially higher than they would have been had the plan followed the proper statutory and constitutional guidelines. *Whelan v. State*, supra; *Bynum v. Alto Ind. Sch. Dist.*, supra. This he did not do. The only evidence in the record concerning the value of personal property not on the tax rolls was testimony elicited from Barbara Lomax, Tax Assessor-Collector:

"Q Mrs. Lomax, do you have any idea of the value—the total value of personal property that is not on the tax rolls?

"A That is not on the tax rolls?

"Q That is right.

"A No.

"THE COURT: Here within the city of Rocksprings?

"THE WITNESS: I wouldn't know.

"By Mr. Gilmer:

"Q Might it be equal to the amount that is on the roll? If you had it all there, would it double your evaluation or not?

"A Possible. There is such few personal property that is listed on there, like I say, grocery stores, or something

that has an inventory like that is the only property we have.

"Q If you had it all on there, you do admit it would materially reduce the amount of tax that you would have to levy if you assessed all of the property within the city limits? There is no doubt about that, is there?

"A No sir, that is probably true."

■ Appellant offered no evidence as to the value of the personal property not listed on the tax rolls; proof of the value of such personal property was necessary to prove substantial injury. Moreover, since no findings of fact and conclusions of law were requested or filed, it must be presumed that every fact issue which has support in the evidence was found in support of the judgment, and the trial court judgment must be affirmed if it can be upheld on any legal theory that finds support in the record. *Washington v. Law*, 519 S.W.2d 953, 954 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968). Point one is overruled.

■ Points two and three complain of the trial court's refusal to grant Hutt a continuance because of the absence of two witnesses—Mary G. Lockley, who had been subpoenaed but failed to appear, and Otis Cowsert, Mayor, for whom process was issued but was returned without service because he was not found. The record does not reflect any such refusal by the court nor does it reflect a motion for continuance by affidavit as required by Rule 252, T.R. C.P. Such refusal, if any, to grant a continuance, if error, was harmless error. Rule 434, T.R.C.P. Points two and three are overruled.

Point four complains of the trial court's refusal to grant a continuance because of Hutt's absence from the trial as necessitated by his duties as justice of the peace which required him to preside over an inquest into a death. The record reveals no such refusal; in fact, Hutt testified at the trial. Rule 434, T.R.C.P. Point four is overruled.

The judgment of the trial court is affirmed.