# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00025-CV

**Janet May Kennedy, Appellant**

**v.**

**Bobby Joe Kennedy and James Piper, Appellees**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. 1999-1437, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

---

After thirty-two years of marriage and five children, Dr. Bobby Joe Kennedy and Ms. Janet Kennedy went through an extremely contentious divorce. Early on in the proceedings, the trial court ordered the Kennedys to sell one of their properties and use the proceeds to pay legal fees and other expenses. For reasons unclear from the record, Ms. Kennedy refused to endorse the check after the property was sold. This caused the court to hold her in contempt and, inexplicably, to strike her pleadings and grant an interlocutory divorce as a sanction. After a trial on the merits, the court rendered a final decree of divorce and divided the parties= property. On appeal Ms. Kennedy complains among other things that the trial court erred in: (1) granting an interlocutory divorce as a sanction, (2) granting summary judgment in favor of James Piper, Dr. Kennedy=s attorney, on her claims that he committed abuse of process and intentional infliction of emotional distress by recommending that the court grant the divorce as a sanction,

and (3) failing to award her post divorce maintenance in the face of a jury finding that she suffered from a disability that precluded her from employment. Because we hold that the trial court=s error in granting the interlocutory divorce was harmless, that the trial court properly granted summary judgment in favor of Mr. Piper, and that the trial court was not required to grant Ms. Kennedy post divorce maintenance, we will affirm the judgment of the trial court.

**BACKGROUND**

Dr. Kennedy filed for divorce in December 1999. In March 2000, the district court entered temporary orders granting Dr. Kennedy primary conservatorship of the couple=s teenage child, granting Ms. Kennedy temporary spousal support, and, among other things, requiring the parties to Acooperate in the listing and sale of the property at 85 Pascal Lane, Austin, Texas, with the proceeds to be placed in an account . . . [to] be used to pay attorney=s fees and related expenses, debts, and extraordinary expenses of either party.@[1]

After the property was sold, Ms. Kennedy refused to endorse the check. Dr. Kennedy then requested the court to order Ms. Kennedy to endorse the check so the proceeds could be deposited into an account as ordered. The court ordered Ms. Kennedy to appear on June 16, 2000 for a hearing on

---

[1] On June 2, 2000, the court entered further temporary requiring that the proceeds of the sale be applied to pay: (1) Ms. Kennedy=s May, June, and July 2000 temporary support, (2) specific attorney=s fees of both the parties, and (3) reimbursement to Dr. Kennedy for Ms. Kennedy=s moving expenses that he had previously paid.

the issue. Ms. Kennedy scheduled shoulder surgery for that day and did not appear. Less than two weeks later, the court ordered that Ms. Kennedy be brought before it. Ms. Kennedy was arrested and, on July 7, 2000, brought before an associate judge. By this time, Ms. Kennedy had fired her lawyer. At the hearing, Ms. Kennedy requested that the associate judge appoint her an attorney because she was indigent. The associate judge denied her request. Ms. Kennedy then testified that she understood that she could be held in contempt and jailed if she did not endorse the check. Repeatedly claiming that she needed an attorney, Ms. Kennedy would not respond to the requests of Mr. James Piper, counsel for Dr. Kennedy, and the demand of the court, that she explain her refusal to endorse the check. The following exchange then took place:

[THE COURT]: Mr. Piper, can I grant the divorce as a sanction? I think I can and then we=ll come back with some property issues.

[MR. PIPER]: Well, you probably can.

[THE COURT]: Would it make a difference to you Mrs. Kennedy, understanding that if you don=t sign the check today, I=m going to grant the divorce today and you=ll come back and sign off (inaudible) concerning your son.

[MS. KENNEDY]: I don=t quite understand what you=re doing.

[THE COURT]: Well, in certain circumstances as what=s called a >sanction for punishment= for failure to follow the rules or orders, the court can grant a divorce as a sanction. And so it=s possible that if you don=t sign the check today, I=ll grant the divorce today, I=ll grant the divorce as of today.

[MS. KENNEDY]: I understand. Well, I=m not in control of that.

[THE COURT]:     Excuse me.  Knowing that is a possibility, you are still not willing to endorse the check?

[MS. KENNEDY]:    I=m not willing to endorse the check today.


In closing argument, Mr. Piper urged the court to jail Ms. Kennedy until she agreed to sign the check, to grant the divorce as a sanction, and to grant him his attorney=s fees.  After closing argument, the associate judge again gave Ms. Kennedy the opportunity to endorse the check.  When she again refused, the associate judge held her in contempt, granted the divorce, and granted Mr. Piper $3,000 in attorney=s fees.  The associate judge then reduced her order to writing, striking Ms. Kennedy=s pleadings as a further sanction.  Three days later, on July 10, 2000, the trial court approved and adopted the associate judge=s order.

Ms. Kennedy filed her notice of appeal of the associate judge=s ruling on the same day the trial court adopted the order.[2]  *See* Tex. Fam. Code Ann. ' 201.015 (West 2002).  In her notice of appeal,

---

[2]  Ordinarily, the referring trial court cannot approve and adopt an associate judge=s recommended order until after it hears a party=s appeal.  *See Santikos v. Santikos*, 920 S.W.2d. 731, 734 (Tex. App.CHouston [1st Dist.] 1996, writ denied).  However, section 201.013 of the Texas Family Code requires the court to immediately review associate judge=s temporary detention and incarceration orders:

> An order by an associate judge for the temporary detention or incarceration of a witness or party shall be presented to the referring court on the day the witness or party is detained or incarcerated.  The referring court, without prejudice to the right of appeal provided by section 201.015, may approve the temporary detention or incarceration or may order a temporary release of the party or witness . . . pending appeal.  If the referring court is not immediately available, the associate judge may order the release of the party . . . pending appeal or may continue the person=s incarceration for not more than 72 hours.

Tex. Fam. Code Ann. ' 201.013(c) (West 2002).  In this case, the court adopted the entire order of the

**4**

she specifically challenged the ruling jailing her for contempt and the ruling Adissolving the 33 year marriage of Janet Kennedy and Bobby Joe Kennedy.@ She therefore was entitled to a de novo hearing on those issues. *See id.* At the de novo hearing, however, the trial court mistakenly assumed that the appeal was limited to the issues of indigence and Ms. Kennedy=s request for a court-appointed attorney. The court coordinator and Ms. Kennedy herself, apparently confused and still without an attorney, confirmed the court=s mistake.[3] When Ms. Kennedy then refused to answer Mr. Piper=s questions without a lawyer, the court denied the appeal. A few weeks later, the court ordered that the check be reissued, payable to the Hays County District Clerk, and that Ms. Kennedy be released from jail.

Ms. Kennedy then filed a counterpetition for divorce alleging that the marriage had become insupportable. This pleading also alleged that Dr. Kennedy was guilty of intentional infliction of emotional distress and abuse of process. She later amended her counterpetition and added Mr. Piper as a defendant. Her claims of intentional infliction of emotional distress and abuse of process related to the incidents surrounding the contempt finding and interlocutory divorce decree. Dr. Kennedy and Mr. Piper each filed traditional and no-evidence motions for summary judgment concerning these claims. The court granted the summary judgment without stating its grounds.

---

associate judge within 72 hours rather than merely approving the temporary detention pending appeal.

[3] At the hearing, in response to the court=s question, Ms. Kennedy indicated that she was appealing the Afact that an attorney . . . [had] not been afforded [her].@ At the hearing=s conclusion, after being told that she was not required to answer Mr. Piper=s questions without a lawyer, Ms. Kennedy declined to respond to the court=s question of whether she was appealing anything other than the issue of her indigence. Ms. Kennedy=s confusion might have been compounded by the fact that the notice of setting that the court coordinator delivered to her in jail stated that it would be an appeal of the associate judge=s Aruling on indigency hearing.@

5

Issues regarding the division of the property, conservatorship, and spousal maintenance were tried to a jury a short time later. At trial, both parties were represented by attorneys and offered evidence. In its verdict, among other things, the jury characterized and valued the Kennedys= property and found that Dr. Kennedy should be named sole managing conservator of Will Kennedy, the couple=s only minor child. The jury also found that Ms. Kennedy was Aunable to support herself because of an incapacitating physical or mental disability,@ a statutory predicate to an award of post divorce maintenance.

In its final judgment, the trial court divided the couple=s property and determined that post divorce maintenance was not warranted. It named Dr. Kennedy sole managing conservator and Ms. Kennedy possessory conservator of Will. The court then ordered that Ms. Kennedy was only entitled to possession of Will at times mutually agreed to by the parties and Aas recommended by Dr. Thomas Lowery,@ a court-appointed clinical psychologist who had evaluated Ms. Kennedy=s relationship with Will.

## DISCUSSION

In her first issue, Ms. Kennedy claims that the associate judge abused her discretion by striking Ms. Kennedy=s pleadings and granting the divorce as a sanction for her refusal to endorse the check. In her third issue, she claims that the trial court erred in failing to properly conduct a de novo appeal of this erroneous interlocutory order.[4] We agree with Ms. Kennedy that the associate judge acted without authority in granting an interlocutory divorce as a sanction in July 2000. We also agree with Ms. Kennedy

---

[4] Although it is not challenged here we also note that absent a contractual or statutory basis, a trial court lacks authority to assess attorney=s fees based upon a finding of contempt, as the associate judge did here. *See Equitable Trust Co. v. Lyle*, 627 S.W.2d 824, 826 (Tex. App.CSan Antonio 1982, writ ref=d n.r.e.).

that the trial court did not properly conduct her de novo appeal from that order. However, because Ms. Kennedy failed to show how she was harmed by either of these actions, we will overrule these points of error.

We note initially that the Kennedys were not divorced until the judgment of divorce was rendered after the trial on the merits. The Ainterlocutory divorce@ was entirely without legal effect. The family code requires that A[i]n a decree of divorce or annulment, the court *shall* order a division of the estate of the parties that it deems just and right.@ Tex. Fam. Code Ann. ' 7.001 (West 1998) (emphasis added). This mandatory provision makes the division of the couple=s property an essential part of any valid divorce decree. *See Adam v. Stewart*, 552 S.W.2d 536, 537-38 (Tex. Civ. App.CHouston [14th Dist.] 1977, orig. proceeding) (construing predecessor to Tex. Fam. Code Ann. ' 7.001). The property division cannot be severed from the divorce action. *Id*. Allowing an interlocutory divorce decree to become effective before a final judgement dividing the party=s property would create innumerable problems:

> For example, after [such] a >divorce=, does a trial court still have discretion to order a division of the estate as the court may deem >just and right=, or must it divide equally the community property of the parties held as tenants in common? After a >divorce=, may the court continue to impose upon the husband a requirement to pay temporary alimony? In the event of a remarriage of either or both of the parties following such a >divorce=, does the accumulation of property in the interim between the divorce and final adjudication accrue to the benefit of the estate of the parties in litigation or to the community estate of the current marriage?

*Id*. However frustrated the associate judge was with Ms. Kennedy=s behavior, she had no legal authority to grant an Ainterlocutory divorce@ as a sanction.

7

Ms. Kennedy=s actions at the hearing validly subjected her to contempt of court but not to sanctions authorized by statute or rule. *See, e.g.*, **Tex. Civ. Prac. & Rem. Code ' 10.004** (West 2002) (sanctions for groundless pleadings); Tex. R. Civ. P. 13 **(same);** Tex R. Civ. P. 215 (sanctions for discovery abuse). Perhaps the trial court thought that it was acting pursuant to its inherent power to sanction for abuse of the judicial process. *See Kutch v. Del Mar College*, 831 S.W.2d 506, 510 (Tex. App.CCorpus Christi 1992, no writ). But a court cannot invoke its inherent power to sanction without some evidence and factual findings that the conduct complained of significantly interfered with the court=s legitimate exercise of one of its traditional core functions. *Id*. There is no such evidence here. Ms. Kennedy=s failure to endorse the check was adequately dealt with by holding her in contempt. Striking her pleadings and granting an unworkable interlocutory divorce was extraordinary and unwarranted.

The trial court also erred in adopting and approving the associate judge=s order in its entirety before hearing Ms. Kennedy=s de novo appeal. *See Santikos v. Santikos*, 920 S.W.2d. at 734. Although the court was required to conditionally approve the associate judge=s contempt order within seventy-two hours for Ms. Kennedy to remain incarcerated, it should have limited its approval to Ms. Kennedy=s incarceration pending her de novo appeal. S*ee* Tex. Fam. Code Ann. ' 201.013(c) (West 2002).

We note additionally that although Ms. Kennedy was not entitled to special treatment as a pro se litigant, *see Robinson v. Surety Ins. Co.*, 688 S.W.2d 705, 710 (Tex. App.CFort Worth, 1985, no writ), the trial court could have taken more care in conducting her de novo hearing. The court presumably had Ms. Kennedy=s notice of appeal in hand. It could have made sure that all her issues were addressed

**8**

even though Ms. Kennedy confusedly indicated at the hearing that her appeal was limited to the issues of her indigence and lack of a lawyer.

Although the trial court erred, Ms. Kennedy has failed to show how she was harmed by the trial court=s handling of her de novo appeal.[5] We have held the interlocutory order of divorce invalid; however, a valid, final, divorce was granted after the trial on the merits. Furthermore, Ms. Kennedy has not shown how her case was affected by her pleadings being struck. After the July 7, 2000 hearing, she filed three successive counterpetitions for divorce. At the eventual trial on the merits, Ms. Kennedy was not prevented from raising any issues. She put on several witnesses and had her questions submitted to the jury.

Similarly, Ms. Kennedy has not shown how the interlocutory rendition of a purported divorce adversely affected her case. The trial court adopted the jury=s property valuations, which were for the most part, the exact values offered by Ms. Kennedy. There is no evidence that the trial court used the July 2000 date of the interlocutory divorce decree in making its just and right division of the couple=s property.[6] Moreover, even if it had, Ms. Kennedy has not shown how the use of that earlier date would have adversely affected her. Most of the couple=s assets had similar values in July 2000 and in April 2001, and the assets with fluctuating values were divided roughly equally. We hold that Ms. Kennedy was not

---

[5] The requirement that the referring trial court hold a de novo hearing when a notice of appeal is properly filed is mandatory. *Attorney General v. Orr*, 989 S.W.2d. 464, 469 (Tex. App.C Austin 1999, no writ). Here, the trial court held a de novo hearing and gave the appealing party a opportunity to be heard, although both the court and the pro se litigant focused only on the issue of indigence at this hearing.

[6] **When the issue of the valuation date was discussed at trial, Ms. Kennedy was ambivalent about what date should be used, arguing, in effect, that the trial court should use whatever date was most favorable to her.**

harmed by the interlocutory order. She was therefore similarly unharmed by the trial court=s failure to

properly conduct a de novo appeal of that order.[7]

---

[7] Because we hold that entry of the interlocutory order was harmless error, we need not address Ms. Kennedy=s complaint that she was denied due process because she was not on notice that the July 2000 hearing would encompass the merits of the divorce action. As we have stated, Ms. Kennedy was not prevented from raising any issue at the later trial on the merits. She was therefore afforded a full and fair hearing on the issue of divorce.

In her fourth and fifth issues, Ms. Kennedy argues that: (1) the trial court erred in recognizing July 7, 2000 as the actual date of divorce, (2) the parties are still married, and therefore, (3) because Dr. Kennedy is still accumulating community property, the division Ais not only not just and right, but is wholly inaccurate.@ These issues lack merit.[8] The Kennedys were divorced when the trial court rendered its judgment after the trial on the merits. At the time the judgment was rendered, the divorce was not contested. Both parties had live pleadings alleging that residency requirements were met and that the marriage had become insupportable. Over the course of the proceedings, the court admitted evidence supporting these allegations, including Dr. Kennedy=s fairly detailed description of the deterioration of the marriage. In its judgment, the trial court found that it had jurisdiction over the parties and the subject matter of the case and stated that Aafter receiving the evidence, . . . [the court] finds that a divorce should be granted.@ The Kennedys are no longer married but have been divorced since August 2001, when the judgment of divorce was rendered.

In her seventh and eighth issues, Ms. Kennedy argues that the trial court erred in failing to award her post divorce maintenance in the face of a jury finding that she was Aunable to support herself because of an incapacitating physical or mental disability.@

---

**[8]** **It is questionable whether Ms. Kennedy preserved these issues for review. In her motion for new trial, she does not claim that she and Dr. Kennedy are still married. The closest she comes to the claims she raises here on appeal are the separate, and quite naked, claims that: (1) the trial court=s division of the marital estate is not just and right, and (2) the trial court erroneously found that the parties had already been divorced at the time of the trial on the merits.** *See* **Tex. R. App. P. 33.1.**

Ms. Kennedy argues that the jury=s determination required the trial court to award her post divorce maintenance. This is not the case. The family code provides for post divorce maintenance when:

> The duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, *including property distributed to the spouse under this code*, to provide for the spouse=s minimum reasonable needs . . . and the spouse seeking maintenance . . . is unable to support himself or herself through appropriate employment because of an incapacitating physical or mental disability.

Tex. Fam. Code Ann. ' 8.051 (West Supp. 2003) (emphasis added). The jury did find that Ms. Kennedy suffered from a disability that precluded her from employment. But the jury did not, and could not, find that the Ms. Kennedy Alacked sufficient property, including property distributed to the spouse under this code, to provide for her minimum reasonable needs.@ The trial court, not the jury, is empowered to make a just and right property division. In this case, after dividing the property, the trial court found that Ms. Kennedy indeed had sufficient property to provide for her minimum reasonable needs. It did not ignore the jury=s finding regarding her disability, but found that another statutory requirement was missing. It did not err in failing to grant Ms. Kennedy post divorce maintenance.

In her sixth issue, Ms. Kennedy argues that the trial court abused its discretion in failing to award her enforceable periods of possession of her minor son Will. Although it is unwise, and probably an improper delegation of its authority, for a court to grant access only as recommended by a consulting psychologist, as this court did, Ms. Kennedy conceded at oral argument that because Will turns eighteen in January 2003, the issue of court ordered access will then be moot.

In her ninth issue, Ms. Kennedy argues that the trial court erred in granting Mr. Piper=s motions for summary judgment. After Ms. Kennedy had joined Mr. Piper to the suit, alleging tort claims against him, Mr. Piper filed both traditional and no-evidence summary-judgment motions. Ms. Kennedy only responded to the no-evidence motion. The court granted summary judgment in favor of Mr. Piper without stating its grounds.

Texas Rule of Civil Procedure 166a(c) states, in relevant part: AIssues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal.@ Because Ms. Kennedy did not respond to Piper=s traditional motion for summary judgment, she is limited on appeal to challenging the legal sufficiency of the grounds presented in his motion. *McConnell v. Southside Indep. School Dist*., 858 S.W.2d 337, 343 (Tex. 1993). Ms. Kennedy cannot argue on appeal that there are disputed fact issues when she did not provide the trial court with summary-judgment proof on those issues. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

A review of Piper=s traditional summary-judgment motion and proof reveals that his grounds were legally sufficient to entitle him to judgment as a matter of law. At the July hearing, the associate judge, not Mr. Piper, suggested granting the interlocutory divorce to induce Ms. Kennedy to endorse the check; when asked by the court, Piper said that he *believed* an interlocutory divorce could be granted as a sanction. Then, at closing argument, he urged the court to grant the divorce as a sanction. Nothing in the summary judgment proof to indicates that Piper=s position was motivated by anything but his good faith understanding of the law and his desire to represent his client. He was not improperly using the legal

**13**

process with an ulterior motive, as is required for Ms. Kennedy to prevail on a claim of abuse of process. *See Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.CHouston [14th Dist.] 1994, writ denied). Moreover, his actions were patently not Aextreme and outrageous,@ as is required for Ms. Kennedy to prevail on her claim of intentional infliction of emotional distress.

Because we are affirming the trial court=s judgment on the grounds Mr. Piper raised in his traditional motion for summary judgment, we need not address whether the court erred in granting his no-evidence motion.

## CONCLUSION

The trial court erred in granting an interlocutory divorce; the parties were not divorced in July 2000 by the invalid order. On August 2, 2001, following a jury trial, the trial court rendered a judgment granting the divorce, dividing the property, addressing issues of conservatorship, and denying spousal support.[9] The parties were then divorced. Appellant has failed to show how her substantial rights to property were affected by the trial court=s interlocutory order. We uphold the evaluations used by the trial court in dividing the property and uphold its denial of spousal support. Likewise, although the trial court erred in wholly delegating decisions regarding conservatorship to a psychologist, that issue has become moot due to the age of the child. We therefore affirm the trial court=s judgment.

---

[9] The judgment granting divorce was rendered when signed on August 2, 2001. On October 10, 2001, the court signed a modified judgment addressing some property issues not relevant here.

**14**

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith, and Yeakel

Affirmed

Filed:   December 5, 2002

Publish