# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00299-CV

**Janet May Kennedy, Appellant**

**v.**

**Bobby Joe Kennedy, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
## NO. 99-1437, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After thirty-two years of marriage, a contentious divorce in August 2001, a modified judgment in October 2001 that placed the husband in possession and control of community real property to be sold and split between the parties, and a prior appeal to this Court,[1] Janet Kennedy appeals the trial court's injunctive relief to enforce its prior judgment and a judgment of contempt against her. She challenges generally the injunction and judgment of contempt.[2] Because we lack

---

[1] *See Kennedy v. Kennedy*, 125 S.W.3d 14 (Tex. App.—Austin 2001, pet. denied), for the history of this litigation.

[2] Although we construe her brief liberally to fairly address all issues appropriate for this appeal, we observe that even though Ms. Kennedy is proceeding *pro se*, she is not relieved of the requirement to comply with the relevant rules of procedural and substantive law:

> There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel. *Mansfield*

jurisdiction to review the judgment of contempt and the trial court did not abuse its discretion in granting injunctive relief to enforce its prior judgment, we dismiss the issues relating to the judgment of contempt and affirm the order granting injunctive relief.

**PROCEDURAL BACKGROUND**

In its modified judgment, the trial court ordered that Dr. Kennedy be placed in possession and control of a community property corporation, Alamo Ranch, Inc., which owned various properties, and that he be given the authority to sell the corporation's assets with the proceeds to be split between the parties. The trial court ordered that Ms. Kennedy receive the first $350,000 from the net proceeds of the sale of the properties, and half of any amount exceeding $350,000. Although Ms. Kennedy appealed various aspects of the divorce, she did not challenge the property issues addressed in the modified judgment.[3] The mandate issued from this Court on October 29, 2003.

As Dr. Kennedy set out to sell the properties as directed by the trial court, Ms. Kennedy set out to defeat the sales. On October 31, 2003, Dr. Kennedy obtained a temporary restraining order against her. At a hearing on Dr. Kennedy's request for a temporary injunction, held before Associate Judge Brenda Smith on November 6, 2003, Ms. Kennedy reiterated her intent to continue living on the properties. At the hearing, Dr. Kennedy described Ms. Kennedy's efforts to thwart attempts to sell the properties. Regarding a 10-acre Hays County property that he sold in

---

*State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). We may not have a separate standard for a litigant who is not represented by counsel. *Id*.

[3] *See Kennedy*, 125 S.W.3d at 22 n.9.

2001, Dr. Kennedy testified that Ms. Kennedy put a lis pendens on the property, cut the locks, removed his real estate signs, and put up her own signs declaring that the property was not for sale. Regarding a 100-acre tract in Hays County, Ms. Kennedy cut the fences and put up her own signs and temporary living structures on the property.

The battle intensified regarding a 254-acre ranch in Gillespie County, known by Dr. Kennedy as the Doss Ranch and by Ms. Kennedy as the Alamo Ranch. Dr. Kennedy testified that Ms. Kennedy cut the fences and trespassed, and that he had reported these actions to the sheriff; Ms. Kennedy claimed that the fence she cut belonged to her. Dr. Kennedy testified that Ms. Kennedy placed a concrete slab in the creek that diverted the creek and destroyed the roadway, pushing the concrete onto a neighbor's property. Both Kennedys sought to lease the property to different hunters. Dr. Kennedy testified that Ms. Kennedy lived on the property in temporary structures and left trash, including bags of wool, on the property. One realtor declined to market the property because she did not want to encounter Ms. Kennedy, who would tell prospective buyers the property was not for sale. At the close of the hearing on November 6, the court granted the temporary injunction restraining Ms. Kennedy from entering the property, entering into lease agreements or rental agreements with hunters or others, interfering with the sale or listing of the properties, and giving her a week to remove her personal items. Ms. Kennedy did not appeal the temporary injunction.

Ms. Kennedy continued to live on the Gillespie County property, and problems with fences cut, signs removed, and realtors and prospective buyers run off persisted as a result of Ms. Kennedy's presence. Dr. Kennedy then sought an injunction. Following an April 15, 2004 hearing on the injunction, the trial court entered an order on May 6, finding Ms. Kennedy in contempt and

3

permanently enjoining her from the various activities previously included in the temporary injunction. The injunction decreed that Ms. Kennedy be enjoined from

- entering or coming within 200 yards of the named properties;

- entering into any lease agreements or rental agreements with hunters or others for the properties;

- interfering in any way with the sale or listing of the properties; and

- placing any signs on the properties, tearing down any sale signs placed on the properties, otherwise locking or blocking the entrance to the properties, or occupying the properties.

The order allowed Ms. Kennedy to enter the property to remove her belongings.

The judgment of contempt recited that Ms. Kennedy had violated the terms of the temporary injunction by living on the properties "as a matter of daily routine, since the day of the Temporary Injunction herein, from her own testimony." The court also found—again from her own testimony—that Ms. Kennedy interfered with the sale of the properties "as charged in the application for contempt by locking gates, cutting fences, destroying signs and defacing the signs advertising the sale of the property." The court found that there was insufficient evidence that she had leased the properties for deer hunting after the issuance of the writ of temporary injunction. Holding her in violation of the temporary injunction, the court suspended a 90-day sentence subject to Ms. Kennedy removing her belongings from the property and obeying the injunction. On May 10, Ms. Kennedy, who had been represented by counsel, fired her attorney.

4

After another hearing, on June 22, 2004, the court found Ms. Kennedy in contempt and ordered her to jail for 45 days. At that hearing, on Dr. Kennedy's motion for enforcement and a permanent injunction, the trial court observed

> [W]e're still litigating things that were resolved three years ago. That's the grounds for the current appeal. Well, it's a never ending—it's got to end. I think that's what I told you-all in January or whenever it was. . . . The state appellate system has denied her appeal on divorce on the merits, therefore, I've got final orders. I've got jurisdiction to enforce my order, which is sell the land and give her the 350,000 and whatever else she gets out of it. . . . [W]e all need to go on to something else. And I'm trying to. I can't figure out how to get everybody on to whatever comes next in life and I sure wish I could.

The court then proceeded with the hearing. Ms. Kennedy testified first. After acknowledging that she put her own lock on the gate at the Doss (Alamo) Ranch, Ms. Kennedy refused to answer whether she had been on the premises of the ranch, instead invoking her fifth amendment right to "refuse to incriminate myself." She testified that she understood that the modified judgment directed that the land be sold at market value, suggesting at one point that the court was "pushing towards" a sale at less than market in violation of the judgment. Dr. Kennedy then presented the testimony of Lee Elms. Elms testified that he had made an offer of $546,000 for the Doss property but withdrew from the contract due to various communications from Ms. Kennedy objecting to the sale and claiming ownership of the property. Elms withdrew his offer when the title company, after receiving communications from Ms. Kennedy, also withdrew and resigned. Ms. Kennedy asserted to the court that her defense to the motion for enforcement was that "this will be the fourth time I'm being put in jail innocently on false charges" on issues relating to the judgment and the sale of the

5

properties. Ms. Kennedy acknowledged that the modified judgment is a final judgment; the court found that she had violated the judgment by remaining on the land and by obstructing its sale.

Her motion to stay and a writ of *habeas corpus* were denied by this Court. Ms. Kennedy appeals the permanent injunction and judgment of contempt.

## DISCUSSION

As a preliminary matter, this appeal proceeds without the benefit of findings of fact and conclusions of law in the record before us. None were requested. We therefore presume that the trial court made all necessary findings to support its judgment, and we will affirm based upon any legal theory that finds support in the evidence. *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.).

Ms. Kennedy's overriding complaint in her oversized brief and reply brief is that she remains the sole officer and owner of the shares of Alamo Ranch, Inc., and is, therefore, the owner of the properties held by the corporation. But the modified judgment recites otherwise—that the properties are community assets—and places Dr. Kennedy in possession and control of the assets and gives him authority to sell the corporation's stock and assets. She acknowledged that she lived on the properties after the court ordered her off of the properties so they could be sold. Ms. Kennedy challenges the evidence supporting the trial court's rulings due to the lack of credibility of Dr. Kennedy's evidence, the "concealment" of evidence, the lack of due process afforded her in the various hearings, and the illegal sale of corporate assets. To the extent these issues relate to the modified judgment, such as her argument that the sale of the assets is illegal, Ms. Kennedy did not timely appeal these issues and they are not before us.

6

Contempt is an inherent power of the courts because it is necessary to insure that courts will be able to enforce their judgments and orders. *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 333 (1904). The customary procedure by which judgments and orders granting injunctive relief are enforced is by a contempt proceeding. *See* Tex. R. Civ. P. 692. To the extent Ms. Kennedy challenges the judgment of contempt for failing to obey the court's orders, we must dismiss this issue, as courts of appeal generally do not have jurisdiction to review contempt orders by way of direct appeal. *See, e.g., Wagner v. Warnasch*, 295 S.W.2d 890, 893 (Tex. 1956); *In re A.C.J.*, 146 S.W.3d 323, 326 (Tex. App.—Beaumont 2004, no pet.); *In re T.L.K.*, 90 S.W.3d 833, 841 (Tex. App.—San Antonio 2002, no pet.). This is true even where the contempt order is appealed along with a judgment that is appealable. *A.C.J.*, 146 S.W.3d at 326. A writ of *habeas corpus* is the proper form of relief from contempt orders involving confinement, *see id.*, a remedy Ms. Kennedy sought unsuccessfully in 2004. We therefore lack jurisdiction to entertain any challenge to the judgment of contempt.

Her remaining issues, if any, appear to relate generally to the conduct of the hearings on the injunctive relief issued by the trial court. We view her challenge through the lens of the standard of review for an injunction: the grant of injunctive relief is ordinarily within the trial court's sound discretion, and on appeal, review is limited to the narrow question whether the trial court's action constituted a clear abuse of discretion. *See, e.g., Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (Tex. 1962). We view the evidence in the light most favorable to the trial court's ruling. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). The record fully supports the trial court's action and does not demonstrate a denial of due process.

7

Ms. Kennedy urges that Dr. Kennedy's testimony and other evidence is not credible, "it being full of inconsistencies and being contradicted by a disinterested party"; that Dr. Kennedy's counsel "conceal[ed] purported evidence in open court"; that the trial court made several errors of law by "ignoring documented evidence and misapplying the law, resulting in perverse rulings" and her incarceration; and that the court countenanced illegal activity.

The record reveals conflicting evidence and the parties' testimony differed greatly. Even their perceptions with regard to the role of Dr. Kennedy and the sale of the properties conflicted, an issue which the trial court recognized had been settled by the modified judgment. At the April 15, 2004 hearing, Ms. Kennedy admitted that she continued to live on the Doss (Alamo) property and had erected temporary living structures. At the June 22 hearing, she invoked her fifth amendment rights in response to questions about whether she resided on the property. There was ample evidence to show that Ms. Kennedy continued to live on the properties in violation of the injunction, that she erected structures, that she cut fences, and that she interfered with the sale of the properties. The "concealed" evidence to which she evidently objects was a judgment and citation against her for hunting on the property without a license. It was admitted to show that she was on the property on December 13, 2003. No abuse of discretion exists where the trial court bases its decision upon conflicting evidence and the credibility of the witnesses. *Id*.

The role of the appellate court in reviewing the grant of injunctive relief is limited to determining whether an abuse of discretion occurred, and it cannot substitute its judgment for that of the trial court. *Id*. An injunction that is not void must be obeyed while it remains in effect. We fully recognize the authority of a trial court to enforce its orders. Here, as no findings of fact or

8

conclusions of law were filed, the judgment must be upheld on any legal theory supported by the record.  Finding no abuse of discretion in the trial court's determinations in any respect, we overrule Ms. Kennedy's issues and affirm the judgment.


_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 28, 2005

9